LOCKWOOD *et al. v.* BOSTWICK *et al.*

A party will be restrained by injunction from using a label as a trade-mark, resembling an existing one in size, form, color, words, and symbols, though in many respects different, if it is apparent that the design of the imitation was to depart from the other sufficiently to constitute a difference when the two were compared, and yet not so much so, that the difference would be detected by an ordinary purchaser unless his attention was particularly called to it and he had a very perfect recollection of the other trade-mark.

It will be inferred in such a case, that the design was to obtain in the manufacture and sale of an article, any benefit or advantage that might be gained by its being purchased for another article of the same description which was known in the market, and a court of equity will protect a party from any such attempt on the part of a rival, to reap the fruits of the enterprise and industry of the other, in making his fabric known and recognized by a distinctive trade-mark.

The sale or transfer of the wood-cuts of a trade-mark does not carry with it the property in the trade-mark itself, unless under circumstances indicating that such was the intention, and this will not be inferred where they were transferred to be used in the printing of labels to be placed upon an article which, by agreement, was to be manufactured under the supervision of the proprietor of the trade-mark.

There is a right of property in a trade-mark which may be transferred to another by assignment.

SPECIAL TERM, *September,* 1869.

THIS was a suit for an injunction to restrain the defendants from using a label bearing the name "*Bovina*," on the ground that it was an imitation of a label used by the plaintiffs, bearing the name "*Boviline*," the labels having, also, otherwise, a close resemblance to each other. The case was tried before Daly, First Judge.

The complaint set forth the following state of facts: That the plaintiffs composed the Gray's Patent Steam Clarifying Association, and were the assignees of a company which owned the patent for a certain apparatus used for purifying lard and tallow, known as the Gray's Steam Clarifying Apparatus; that the said company had, in the early part of the year 1864, effected an arrangement with the defendants, by the terms of which the latter were to use the said apparatus in manufactur-

ing an article of hair pomade, and were also to sell and dispose of the said pomade in the market, under the general supervision of the company; that, before making these agreements, the company had agreed upon and adopted, as a trade-mark and label for the proposed pomade, an engraving of a particular kind, with the name and title of " *Boumeline*," but at the time of employing the defendants, had changed the name to " *Boviline*," and had selected a peculiar ash-color for the label ; that afterward the defendants canceled their agreement with the company, and proceeded to manufacture on their own account a similar pomade, calling it " *Bovina*," and putting forth a label of the same color as the plaintiffs', and with a like engraving upon it, and similar in other respects : that, about the same time, the said company made an assignment of all its property to the plaintiffs, who at once began manufacturing " *Boviline*," and gave defendants notice thereof.　The complaint also alleged that the engraving on the " *Boviline* " label represented the apparatus aforesaid, which was used in rendering the lard and tallow from which the pomade was manufactured, whereas the engraving on the " *Bovina* " label represented no apparatus at all, and was only used as an imitation.

The answer denied the resemblances of the two labels, and set forth that the alleged arrangement between the company and defendants left the company no control over the pomade business, which became exclusively the property of defendants, and that they (defendants) organized said business, and invented and got up the labels, etc., etc., and were the sole proprietors of the " *Boviline* " trade-mark, and that they had changed the name to " *Bovina* " for certain copyright purposes.

It appeared on the trial that the distinctive feature of the " *Boviline* " label was the *engraving* representing the aforesaid apparatus, and that this had been adopted by the company as a general trade-mark in all its business, and had been put upon their seal, and that the seal had been varied by adding the name " *Boviline*," for the purpose of impressing it upon the corks of the pomade bottles.

It also appeared that the *label*, as originally devised, was in other respects, except as to the name " *Boviline*," the same as

afterward used in the first manufacture of the pomade; and that a member of the company had arranged and prepared it, and had used the name "*Boumeline*" at the suggestion of Prof. Owen, the Greek Professor of the Free Academy,—that word being compounded of "*Bou*" and "*myelos*" meaning *ox-marrow;* but that the name was changed to "*Boviline*" at the request of the defendants when they began manufacturing for the company.

It further appeared that the defendants had purchased the wood-cuts of the "*Boviline*" engraving from the president of the company, and that, on canceling their agreement, they retained the possession of these; and they exhibited in court one of the company's seals bearing the "*Boviline*" trade-mark. The evidence was undisputed, however, that the defendants had, after the said cancellation, recognized the company's ownership in the trade-mark and designs for the cuts or engravings.

*Henry Everett Russell,* for plaintiffs, cited on the question of *simulation, Crowshaw* v. *Thompson* (4 M. & G. 385), referred to in *Fettridge* v. *Merchant* (4 Abb. 159); and on the question of *title,* 25 American Jurist, 279, and *Fettridge* v. *Merchant* (4 Abb. 160); and argued that the sale of the wood-cuts was no sale of the *design* of the engraving, unless distinctly so specified; for that the right to use the engraving as a trade-mark was separate from the engraving itself, and this right of user being the essential element of the plaintiffs' property in their trade-mark, no transfer of it was to be presumed.

*A. Dana Wells* for defendants, cited *Patridge* v. *Menck* (2 Sandf. Ch. 622); *Amoskeag Co.* v. *Spear* (2 Sandf. S. C. 599); *Williams* v. *Johnson* (2 Bosw. 1), and Upton on Trade Marks, 199 ; and argued that the defendants had the exclusive right to the use of the name "*Boviline*" and its label.

DALY, F. J.—The defendants were simply the servants of the company during the period covered by the agreement. The transfer of the wood-cuts to the latter was simply to enable them to place the labels upon the pomade manufactured by

them under the company's supervision, and was not intended to, and did not, have the effect of transferring to the defendants any property in the trade-mark. In fact the defendants by their own acts afterward acknowledged the company's continuing ownership and right to use the trade-mark. An inspection of the two labels shows that the one afterward used by the defendants, and the use of which the plaintiffs seek to restrain by injunction, was, in respect to form, color, words, and symbols, so like the former as to make it manifest that the design of the defendants in using it was to deceive, the resemblance being such as would be likely to impose upon ordinary purchasers, according to the rule recognized in *Crowshaw* v. *Thompson* (4 Mann. & G. 385). It was alike in the size and form of the label; in the color of the paper, a peculiar, delicate gray tint; the machine or apparatus represented was one that had no existence in fact, but resembling the real machine sufficiently for the difference to escape observation unless upon attentive examination; and the word "*Bovina*" was substituted for "*Bovi-line*," printed in the same type and in exactly the same place as the other at the head of the label. The design evidently was to depart from the other sufficiently to constitute a difference when the two were compared, and yet to do it so skillfully that the difference would not be detected by an ordinary purchaser unless his attention were particularly called to it and he had a very perfect recollection of the other label. The design was to deceive, and to obtain, in the manufacture and sale of the article, any benefit or advantage that might be gained by its being purchased for another article of the same description, which was known and distinguished by a particular trade-mark. There could be no other motive, and it was done with the shallow expectation, that the law would not see through the motive, but pronounce that the two labels were not the same, by simply distinguishing the points of difference between them. So far as the object sought could be attained, it would operate to the plaintiffs' detriment by diminishing the sale of their articles in the market, and they are entitled to be protected by a court of equity from this attempt on the part of rivals to deprive them of the fruits of their industry or enterprise in mak-

ing their own fabric known and recognizable by its distinctive trade-mark.    There is a right of property in a trade-mark which is capable of being transferred to another, and the right and title which the company had to this trade-mark passed to the plaintiffs by the assignment.

The motion to dissolve the injunction is denied, and the plaintiffs are entitled to judgment.