[No. 12064.    Department Two. — November 22, 1889.]

# SPERRY AND COMPANY, Appellant, v. PERCIVAL MILLING COMPANY, Respondent.

TRADE-MARK — INFRINGEMENT — "GERMEA" — "GOLDEN EAGLE GERM." — An intentional imitation of a trade-mark which is so close as to be likely to deceive an ordinary purchaser will be enjoined, notwithstanding the fact that an attentive inspection would disclose differences in many respects between the two trade-marks. In this case, the plaintiff's trade-mark of "Germea" held to have been infringed by defendant's trade-mark of "Golden Eagle Germ."

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Newlands, Allen & Herrin*, for Appellant.

A device, emblem, stamp, imprint, label, or wrapper is protected by law as a trade-mark. (Pol. Code, secs. 3196, 3199; *Burke* v. *Cassin*, 45 Cal. 477; 13 Am. Rep. 204; *Hier* v. *Abrahams*, 82 N. Y. 519; 37 Am. Rep. 589.) The circumstances show a fraudulent design to imitate plaintiff's trade-mark sufficiently to deceive customers, and that will sustain an injunction, though there are points of difference. (*Avery* v. *Merkle*, 81 Ky. 102; *Burke* v. *Cassin*, 45 Cal. 478; 13 Am. Rep. 204; Sebastian on Trade-marks, 71, 72, 74, 78; Brown on Trade-marks, sec. 33; *Blackwell* v. *Crabb*, 36 L. J. 504; *Shaw Stocking Co.* v. *Mack*, 12 Fed. Rep. 708; *Liggett* v. *Hynes*, 20 Fed. Rep. 885; *Royal Baking Powder Co.* v. *Davis*, 26 Fed. Rep. 293; *Filley* v. *Fassett*, 44 Mo. 128; 100 Am. Dec. 275; *Swift* v. *Day*, 4 Rob. (N. Y.) 611; *Lockwood* v. *Bostwick*, 2 Daly, 52; *Taylor* v. *Taylor*, 23 Eng. L. & Eq. 281; *Amoskeag Mfg. Co.* v. *Spear*, 2 Sand. 599; *Walton* v. *Crowley*, 3 Blatchf. 446; *Edelstein* v. *Vick*, 11 Hare, 78; 13 Eng. L. & Eq. 51; *McLean* v. *Fleming*, 96 U. S. 245–258; *Celluloid Mfg. Co.*

v. *Cellonite Mfg. Co.*, 32 Fed. Rep. 94; *Sawyer* v. *Horn*, 1 Fed. Rep. 24; *Sawyer* v. *Kellogg*, 7 Fed. Rep. 720; *Actien-Gesellschaft* v. *Somborn*, 14 Blatchf. 380; *Moxie Nerve Food Co.* v. *Baumbach*, 32 Fed. Rep. 205; *Moxie Nerve Food Co.* v. *Beach*, 35 Fed. Rep. 248; *Parlett* v. *Guggenheimer*, 67 Md. 542; *Morgan* v. *Troxell*, 89 N. Y. 292.)

*William B. Haskell*, and *T. J. Geary*, for Respondent.

"Germea" is a name indicating, not the origin, but the qualities and ingredients of the preparation, and cannot be adopted as a trade-mark. (Civ. Code, sec. 991; *Amoskeag Co.* v. *Spear*, Cox's Trade-mark Cases, 87; *Choynski* v. *Cohen*, 39 Cal. 501, 2 Am. Rep. 476; *Burke* v. *Cassin*, 45 Cal. 467; 13 Am. Rep. 204; *Falkenburg* v. *Lucy*, 35 Cal. 52; 95 Am. Dec. 76; *Gilman* v. *Hunnewell*, 122 Mass. 139; *Gillott* v. *Esterbrook*, Cox's Trade-mark Cases, 340; *Popham* v. *Cole*, 66 N. Y. 69; 23 Am. Rep. 22; *Hier* v. *Abrahams*, 82 N. Y. 519; 37 Am. Rep. 589; 6 Wait's Actions and Defenses, 24, 27; Upton's Law of Trade-marks, 99; *Newman* v. *Alvord*, 51 N. Y. 189; 10 Am. Rep. 588; *Thompson* v. *Winchester*, Cox's Trade-mark Cases, 10.) There can be no trade-mark in the form of the package, and the form of a vendable commodity cannot be a trade-mark. (*Gillott* v. *Esterbrook*, Brown on Trade-marks, sec. 89 b; *Moorman* v. *Hoge*, 2 Saw. 78.) There can be no trade-mark in a label; and no manufacturer can have an exclusive right to use a particular colored paper for his package. (*Faber* v. *Faber*, Cox's Trade-mark Cases, 401; Brown on Trade-marks, 83, 112, 133, 270, 272; *Payson Indelible Ink Case*, Brown on Trade-marks, secs. 271, 272.) Pictures alone cannot be the subject of trade-mark. (*Eggers* v. *Hink*, 63 Cal. 445; 49 Am. Rep. 96.) Nor anything indicating merely degrees of quality. (*Royal Baking Powder Co.* v. *Sherrell*, 93 N. Y. 331; 45 Am. Rep. 229; *Enoch Morgan's Sons Co.* v. *Troxell*, 89 N. Y. 292; *Candee* v. *Deere*, 54 Ill. 439; 5 Am. Rep. 125.)

McFARLAND, J.— Plaintiff and defendant are 1 oth corporations; and the action is to enjoin defendant from counterfeiting, etc., certain trade-marks, labels, etc., of plaintiff, and for damages. The court found certain facts upon which it rendered judgment for defendant; and plaintiff appeals from the judgment, and from an order denying a new trial.

The main contention of appellant is, that the conclusions of law reached by the court below were erroneous, and that, upon the findings of fact, the judgment should have been for plaintiff.

From March, 1883, to the commencement of this action, February 4, 1886, plaintiff and its assignors were engaged in manufacturing by the roller process, and selling, a certain meal made from wheat and used for mush, etc., to which they gave the coined name "Germea." Down to within one month of the commencement of this action this commodity was exclusively put up by plaintiff in certain packages, with certain labels, etc., thereon, which were registered with the secretary of state as a trade-mark in May, 1883. About a month before the commencement of the action defendant began the manufacturing and selling of a meal made by the roller process from wheat, and put it up in packages with labels thereon, which plaintiff avers to be an infringement of its said trade-mark. Defendant had not registered any trade-mark at the date of the commencement of the action, but did so four days afterward.

The findings consist (in addition to the above facts) mainly of fac-similes of the packages and labels of the two parties,— or rather, the actual labels are pasted into the findings, — so that, by looking at the transcript, an observer can see the two packages just as they appeared to purchasers. As their significance depends greatly upon the various colors used, it would be difficult to reproduce them here, and we see no necessity of attempting it. And we will confine ourselves to a very brief

statement of the similarity of and difference between the two packages.

1. The two packages were of exactly the same size, shape, weight, and color. They were each of cylindrical shape, eight inches long and four inches in diameter, and were composed of paper bags of the same kind and color.

2. On the top of plaintiff's packages there was a small square label with the words, "Sperry & Co.," and underneath, the word "Germea." There were also a few other words on the label. On the top of defendant's package there was also a small square label, very similar to that of plaintiff, but having printed on it the words "Golden Eagle," and underneath, the word "Germ."

3. On one side of plaintiff's package is a label on light-brown paper, about six inches long and three inches wide, with a small red border. On the upper side are the words, printed in blue, "Germea for Breakfast." Next below are the words, in blue, "Ask your grocer for." Immediately below this are the words, in blue also, and in a large type, "Sperry's New Process," and below that, in still larger type, and in blue, the words "Patent Flour." On the end of the label, and outside of the red border, are the words, in blue, "Trade-mark registered."

On a similar side of defendant's package there is a label of a similar size and paper to that of plaintiff, having also a small red border, and with all the words also printed in blue. On the upper side are the words "Golden Eagle Germ," and immediately below, "Breakfast Dish." Immediately below that are the words "Ask your grocer for"; then next below, in large type, "Percival's New Process," and last below, in still larger type, "Patent Flour." At the end, also outside the red border, are the words "Trade-mark registered."

4. On plaintiff's package, next to the above label, was

another label of similar size and paper. On the top of the label there is the word "Germea," printed in red letters, and immediately below this word is a picture of plaintiff's mill, in blue color. It represents a main building five stories high, with a flag-staff and flag on top, and lower wings on either side. Below this are several sentences commending the commodity as nutritious and agreeable food. All these sentences are printed in blue, except the word "Germea," which, whenever it is used, is printed in red. The name of plaintiff is then given in red, and the words "Trade-mark registered," at the bottom, in blue.

At the same place on its package the defendant had a label of the same size and kind of paper. On the top were the words "Golden Eagle," in red, and immediately below these words there is also a picture, in blue, of a building almost exactly like the one of plaintiff's label. It represents a main building five stories high, with a flag-staff and flag on top, and lower wings on either side. It is almost impossible to detect any material difference in the two pictures. It is not a picture of defendant's mill. Below the picture are the words, in red, " Germ; Breakfast Dish." Next come several sentences, in blue, in commendation of the article. Below that is the name of the proprietors, in red, and last, the words "Trade-mark registered," in blue.

5. On plaintiff's package there appears next a label, similar in size to the others, on the top of which is the word, in red, "Sperry's." Immediately below, in large, heavy, blue letters, is the word "Germea," and next below, in red, " For breakfast." Then follows four sentences, in blue, containing directions for the use of the article. At the bottom, " Trade-mark registered," in blue.

A similar label on defendant's package has at the top, in red, the word "Directions." Then, after the words "For using the," in small type, come the words "Golden

Eagle Germ," in large, heavy, blue letters, and next below, in red, "Breakfast Dish."   Then follow four sentences of directions for use, all in blue, except three words, "and trade-mark registered," in blue.

6. Another, and the last, label of the plaintiff has at the top the word, in red, "Germea," and immediately below it is a picture of a child eating mush out of a bowl, — all in blue.   Below the picture are the words, in red, "For breakfast," and next, the words, in blue, "No soaking required."   Below that are the words, in red, "Cooks thoroughly in a few minutes," and then the figure and word, in blue, "4 pounds."   And then, after the names and place of business of the proprietor, come the words, in red, "For sale by all the grocers," with the final "Trade-mark registered," in blue.

On a corresponding label of defendant there is at the top, in red, "Golden Eagle "; next below, in red, "Germ"; and then below, in red, "Breakfast Dish."   Immediately below that is a picture, in blue, of *two* children eating mush out of a bowl.   Next below are the words, in red, "Cooks thoroughly in a few minutes "; and below that, in blue, "4 pounds."   Then follows the name and place of business of the defendant; and next below, in red, "For sale by all the grocers," followed by the inevitable "Trade-mark registered," in blue.   And during all this time the defendant *had* no "trade-mark registered."

The above descriptions do not create in the mind an entirely accurate notion of the similarity of appearance presented by the two packages.   It sufficiently appears from them, however, that the two packages were of the same size and shape, and of the same kind of paper; that the labels were of the same size and shape, and placed on the packages in the same manner; that on the labels the same colors were used, and that the alterations of the colors were the same; that wherever there is a progressive increase of the size of letters and words

in plaintiff's labels, there is a similar progressive increase in the labels of defendant; that the word "Germ," used by defendant, is very similar in appearance and sound to the word "Germea," coined by plaintiff; that the sentences printed on defendant's labels are very similar to those on plaintiff's labels, and in many instances (see subdivision 6 of this opinion) exactly the same; that the words "Trade-mark registered" are on each package in the same type and color, and at the same place, — outside the red border; that the two pictures of plaintiff (of the mill and the child) are copied by defendant, the one literally and the other nearly so; and that the two packages, as above described, would produce on the eye of a purchaser a similar impression. And when we view the two packages shown as entireties in the transcript, their close similarity is unquestionable.

In our opinion, upon the facts found, the judgment should have been for plaintiff.

The rule governing such cases is, that if the imitation of a trade-mark is intentionally so close as to deceive an ordinary purchaser, the defendant is liable, and the fact that an attentive inspection will disclose differences in even many respects between the two articles will not shield him.

In *Lockwood* v. *Bostwick*, 2 Daly, 521, the suit was for an injunction to restrain the defendants from using a label bearing the name "Bovina," on the ground that it was an imitation of a label used by plaintiffs bearing the name "Boviline," —the labels having also, otherwise, a close resemblance to each other. Judgment for plaintiff was sustained, and the court, in its opinion, uses language which clearly expresses the correct rule, and is also directly applicable to the case at bar. The court, speaking of the two labels, says: " The design evidently was to depart from the other sufficiently to constitute a difference when the two were compared, and yet to do it so skillfully that the difference would not be detected by

an ordinary purchaser unless his attention was particularly called to it, and he had a very perfect recollection of the other label. The design was to deceive, and to obtain, in the manufacture and sale of the article, any benefit or advantage that might be gained by its being purchased for another article of the same description, which was known and distinguished by a particular trade-mark. There could be no other motive, and it was done with the shallow expectation that the law would not see through the motive, but pronounce that the two labels were not the same, by simply distinguishing the points of difference between the two."

In *McLean* v. *Fleming*, 96 U. S. 245, the supreme court of the United States says: "What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do in that regard is to say that no trader can adopt a trade-mark so resembling that of another trader as that ordinary purchasers buying with ordinary caution are likely to be misled. . . . . Much must depend, in every case, upon the appearance and special characteristics of the entire device; but it is safe to declare, as a general rule, that exact similitude is not required to constitute an infringement or to entitle the complaining party to protection. If the form, marks, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device, is such as to be likely to mislead one in the ordinary course of purchasing goods, and induce him to suppose that he was purchasing the genuine article, then the similitude is such as entitles the injured party to equitable protection."

We have quoted from these two cases because the language employed in the opinions aptly expresses the true rule. There are numerous authorities to the same point. And it clearly appears that in the case at bar the defendant did the precise thing which the authori-

ties declare an infringement. The testimony shows that the person who prepared the bags and labels of defendant had the bag and label of plaintiff before him; and the witness Siegelken,—the only witness who testified directly on the point,—after stating that he was a grocer, said: "I have sold right along 'Germea' and 'Germ,' and am familiar with both packages; I have had both brands, and sold them. When customers have asked for 'Germea,' I have handed them out 'Germ.' I have them side by side." But this testimony was not necessary to show either the intent or its fulfillment; both clearly appear upon the face of the packages as they are presented in the findings.

These views make it unnecessary to notice other points raised by appellant. It is proper to say, however, that there are no grounds for granting respondent's request to strike out the transcript or dismiss the appeal. And as appellant waives all claims for damages, and all relief asked for under paragraphs 2, 3, and 4 of the prayer of the complaint, there is no necessity of a new trial.

The judgment and order are reversed, with directions to the court below to render a judgment for plaintiff decreeing an injunction as prayed for in the first paragraph in the complaint, with costs; but without damages, or other relief prayed for.

THORNTON, J., and SHARPSTEIN, J., concurred.