The petition alleges that since 1903 it has manufactured and sold an article known as the Block light, which is used to increase the candle power of gas lights, and which is sold in a package having a certain label and trade-mark, which was adopted in the year aforesaid and has been used ever since. A copy of the label and description of the trade-mark is set forth in the petition, and then comes the allegation that the Block light has secured a great reputation by reason of its excellence and is known to the public because of this label, etc. It is further alleged that the defendants, doing business as the Crown Incandescent Light Company, with full knowledge of the rights of the plaintiff, have for months past sold an imitation of the Block mantle put mp in packages similar to those of the plaintiff. This imitation of the plaintiff’s article is alleged to be greatly inferior to the genuine article, and the reputation of the plaintiff’s article is, it is said, being much damaged by the acts of the defendants. It is further alleged that the defendant is selling as a genuine Block light a Block burner with a mantle other than a Block mantle inside. Besides the damages, a temporary restraining order is prayed for to prevent the defendants from further manufacturing and selling this imitation light or imitating the plaintiff’s packages. On final hearing a perpetual injunction is asked for.
A temporary restraining order was granted to the plaintiff, and the case now comes before the court on a motion to vacate this temporary order. Affidavits and oral testimony have been *555 submitted to the court. The plaintiff has shown that it has been in business since 1903 manufacturing a certain medium for giving light known as the Block light, which consists of a burner of a certain sort and of a mantle made of a certain size especially designed for plaintiff’s burners,, upon which mantle is stamped the word “Block”; and that a large amount of money has been spent in advertising the Block light. It has been shown further that agencies have been established in every state and territory in the United States in order to supply the demand for this light, and that all Block lights are identified by certain marks, labels, etc.
It was admitted by Mr. Fred. Tappehorn, one of the defendants (w'ho is really the sole owner of the Crown Incandescent Light Company, Emil Tappehorn being his son), on cross-examination, that the Block light consists of the Block burner and the Block mantle in connection therewith; although it is admitted by plaintiff that each part is frequently sold separate from the other. The fact, however, that the burner and mantle together make what is called the Block light is important when we come to consider the sale made to Camay of a Block burner with a Gladiator mantle by Emil Tappehorn in defendants’ store when Camay asked for a “Block light.”
The peculiar thing in this case is that the mantles, for the sale of which by these defendants the plaintiff complains, were made by the Raritan Company of New York on the order of the plaintiff.
It is shown by the testimony on both sides that several thousand mantles were ordered by the plaintiff from the Raritan Company of New York, the latter company being a manufacturer of mantles. It appears, furthermore, that a large number of these mantles were shipped to the plaintiff, and that the plaintiff at first sent most of those received to its agents throughout the United States, but afterwards recalled them. It further appears that three hundred and eighteen of this lot of mantles were returned by the plaintiff to the Raritan Company, and the plaintiff refused to pay for any of these three hundred and eighteen mantles. What the plaintiff did with the other mantles, several thousand in number, does not appear and is not important here.
*556 Of the three hundred and eighteen mantles sent back by plaintiff to the Raritan Company, one hundred found their way into the hands of these defendants, and from the one put in evidence it is apparent that these mantles were made shorter than those put on the market by the plaintiff.
It is because of the sale by the defendants of some of this lot of three hundred and eighteen mantles returned by the plaintiff to the Raritan Company that the plaintiff complains; and the first question here is, are the defendants, in selling these mantles, selling genuine or spurious Block mantles?
Counsel for defendants attaches weight to some evidence filed by him which state that all of this lot of several thousand mantles were manufactured by the Raritan Company strictly according to the orders of the plaintiff, and that these mantles were shorter than Block mantles because of the fault of plaintiff in furnishing the Raritan Company with wire supports (upon which the mantles rest) that were shorter than they should have been. It is-the opinion of the court that these facts are of no moment in this case, for a reason to be given presently.
Because that lot of three hundred and eighteen mantles returned to the Raritan Company by the plaintiff were shorter than the mantles which the plaintiff puts on the market as “Block” mantles, and further, because the plaintiff repudiated the three hundred and eighteen mantles by sending them back and refusing to pay for them, and still further, because the plaintiff recalled from its agents all the Raritan mantles, and in no case (so far as the testimony shows) put any of these short mantles on the market, this lot of three hundred and eighteen mantles has no claim to be designated as Block mantles, in the opinion of the court.
Now, is -it unfair competition for the defendant to sell these mantles in the market as “Block mantles” to one asking for the latter article? And again, is it unfair competition when a customer asks for the “Block light” to hand him a Block burner > with a Gladiator mantle inside the chimney, both wrapped up in a piece of paper.
There is really no dispute about the further facts in the case. Mr. Friedlander, a stockholder in the Block Company, called *557 at the store of the Crown Incandescent Light Company, and saw Mr. Emil Tappehorn, with whom he had a talk before the petition in this case was filed. There is some difference as to what was said in that conversation, but there is no dispute that Mr. Friedlander warned Mr. Tappehorn not to sell these mantles as Block mantles, and that Mr. Tappehorn declared that they had been selling these mantles as Block mantles and intended to continue to do so. It is also in evidence without dispute that a girl called at the defendants’ store a few days before the petition was filed in the case and asked for a Block mantle, and that she received one of these short mantles from Mr. Emil Tappehorn. Further, it is undisputed that Mr. Camay called there some days later and asked for a Block light and received from Mr. Emil Tappehorn a Block burner with a Gladiator mantle inside the chimney, both wrapped in a piece of brown paper.
It is the opinion of the court that the foregoing facts make out a case of unfair competition in trade on the part of the defendants that ought to be enjoined.
Unfair competition has been frequently defined. In the case of Heinisch’ Sons v. Boker, 86 Fed. Rep., 765, Townsend, J., says:
“The law, firmly established by repeated decisions in this circuit, enjoins every artifice which promotes unfair trade.”
Again, in Merriam v. Shoe Company, 47 Fed. Rep., 411, 414, the court says:
“Wrongs of this description, whereby through an artifice of any sort the goods of one manufacturer become confused in the public mind with the goods of some other manufacturer, may be redressed in a court of equity.”
“One can not be permitted to practice deception in the sale of his goods as those of another nor to use the means which contribute to that end” (Perry v. Truefitt, 6 Beav., 73).
The cases in which courts have applied this principle of law cover a broad field and treat of almost every deception by which one tradesman can in any way take advantage of the good name of a competitor.
*558 It has been held-that no one has the right to represent his goods as the goods of another by printing upon them the name of the other (Hoff v. Tarrant & Co., 71 Fed. Rep., 163; Penn, etc., Company v. Myers, 79 Fed. Rep., 87; Reddaway v. Benham, [1896], App. Cas., 199).
One may not print upon his goods a name similar to that printed on some one else’s goods (Clark Thread Company v. Armitage, 67 Fed. Rep., 896; McLean v. Flemming, 96 U. S., 245).
To adopt and use in connection with one’s goods a firm or a corporate name similar to that employed by the manufacturer of a competing article is unlawful (Higgins & Company v. Higgins Soap Company, 144 N. Y., 462; Van Anken v. Van Anken Company, 57 Ill., 240; Sperry Company v. Percival Milling Company, 81 Cal., 252; La Republique Francais v. Schultz, 57 Fed. Rep., 37).
Refiling original packages is, of course, unlawful (Barnet v. Lanchars, 13 Lt. [U. & L.], 495; Evans v. Von Laer, 32 Fed. Rep., 153; also, Id., 388).
Imitating the appearance of dress of another’s product is unfair competition (Coates v. Merick Thread Company, 149 V. S., 562; Moxie Food Company v. Baumbach, 32 Fed. Rep., 205).
It is a fraud on a person who has established a trade and carried it on under the name of “Mechanics’ Store” when some other-person opens up a like sort of store under the name “Mechanical Store” (Weinstock, etc., v. Marks, 109 Cal., 529). And where ,the plaintiff had conducted his business under the name of “Carriage Bazar” for many years, it is a fraud upon him for the defendant to open up a shop in the vicinity with the name of “New Carriage Bazar” (Boulnois v. Peake, 13 C. D., 513, Note).
A case somewhat like this case is Richards v. Williamson, 30 Law Times (N. S.), 746, cited by the learned counsel for plaintiff. In this ease the defendants were restrained from making and selling carbines of which the levers and lock plates were second-hand parts of rifles made by the plaintiff, and bought in market overt by the defendants, upon which second-hand parts were stamped the name and trade-mark of the plaintiff.
*559 None of these cases are just like the case in hand, which is rather peculiar in its facts; but they are cited to show the great variety of cases in which the courts have set themselves against unfair competition in trade.
But the learned counsel for the defendants claims that as the mantles in this case were marked “Block” through the fault of the plaintiff itself, and not in anywise through the defendants’ fault, the latter have the right to sell them even if customers do mistake them for genuine Block mantles, provided the defendants simply hand the goods over their counter without any verbal misrepresentation. .With this proposition the, court can not agree. Even if the defendants’ name was Block, they could not‘begin at this time to sell mantles stamped with the name of Block when the plaintiff in this case has for years been extensively advertising and selling mantles bearing that name. In the leading case of Walter Baker & Company v. Baker, 87 Fed. Rep., 209., it is held that “One entering a particular trade may not use his own name in a way calculated to cause confusion between his own goods and those of an old established manufacturer having the same name. ’ ’ It is- then laid down that when a manufacturer’s goods have become known to the trade as “Baker’s Chocolate,” “Baker’s Cocoa” and “Baker’s Breakfast Cocoa,” another also bearing the name of “Baker,” subsequently entering the trade, may not use, to designate his goods, those combinations of words with or without the addition of other words or names. An exceedingly interesting article on unfair competition by the deceptive use of one’s own name, written by Mr. W. L. Putnam, appears in the 12 Harvard Law Review, page 243, with many leading cases cited, and supports this view.
It has been further claimed by both defendants and their counsel that they had no knowledge of the trouble between the Raritan Company and the plaintiff about these matters, and believed them to be genuine 'Block mantles. The court is of the opinion that even if they were not advised why these .are not genuine Block mantles by Mr. Friedlander on his visit to their store, it is sufficient that he told them that they are not Block mantles. The fact is, however, that their knowledge or intent in *560 the premises is of no moment. As is stated in the able article in the 12 Harvard Law Review just referred to:
“It is to be observed that the plaintiff’s right to be protected against loss and injury to his trade caused by any deception, so far as this protection can be afforded without unreasonably restricting trade, does not depend on any intentional fraud or Toad motive of the defendant.”
This same doctrine is laid down in the celebrated case of Reddaway v. Benham, supra, where the court says, on page 644:
“To obtain an injunction in a case like the present it is not necessary to prove an intention to mislead; nor to prove that anyone has in fact been misled; all that need be proved is that defendant’s goods are so marked, made up and described by them as to"be calculated to.mislead ordinary purchasers and lead them to mistake defendant’s goods for the goods of the plaintiff.”
Again in the ease of Tarrant v. Hoff, 76 Fed. Rep., 959, 961, the complainant had no registered trade-mark in the United States although his label and trade-mark was duly registered in Germany. Here the Circuit Court of Appeals said, page 961:
“If the representation as to what" or whose the goods are is calculated to deceive the purchaser into buying them as the goods of the complainant, equity will enjoin its continuance, although the deceitful representation was placed upon them carelessly, or from lack of an appreciation of -the meaning it would convey to the purchaser, or from an honest mistake as to defendant’s right to use it.”
The point is also made by counsel for the defendants that the plaintiff does not come in with clean hands, because of its treatment of the Raritan Company, and this is why the learned counsel have laid stress upon the fact that the Raritan Company made the mantles strictly according to contract, the fault with them being because of. the plaintiff having sent wire supports which were too short. The court declines to pass upon this question whether the plaintiff was at fault or not, in its dealing with the Raritan Company, for, as the court has said above, these matters cut no figure in this case. It is a well established principle that this maxim in equity applies only to the particular transaction under consideration, and the court will not go out *561 side of the case for the purpose of examining the conduct of the plaintiff in other matters (Bispham’s Equity, 642; Snell’s Principles of Equity, 25). The application of this maxim is illustrated in the ease of Burch v. Toledo Plow Company, 15 C. C., 482, a ease somewhat resembling the one in hand.
One other point made by learned counsel for defendants is that equity does not eeneern itself with small matters, and that these mantles do not amount to much in value; but the fact is that the plaintiff is contending here .not for the cost of a few mantles, but to preserve its trade name which it has proved to be of great value.
The next matter we have to consider is the sale made by Mr. Emil Tappehorn to Benjamin Camay after the temporary restraining order was allowed, when the latter asked the former for a “Block light” and received a Block burner with a Gladiator mantle inside the chimney, both wrapped in paper.
The point has often been raised in this class of cases whether the plaintiff can object when the customer could easily see that he was not getting what he asked for. It is true that in this case the Gladiator mantle is put up in a cylindrical green box plainly marked with the word “Gladiator,” and can easily be distinguished from .tbe Block mantle, wheh is put up in a small cylindrical yellow box marked “Block mantle.” But this defense of “self-deception” has never been countenanced by the courts. In the celebrated case of Enoch Morgan Sons v. Wendover et al, 43 Fed. Rep., 420, the plaintiff sold a commodity known on the market as “Sapolio.” When on three or four occasions certain agents of the plaintiff went to the store of the defendant and asked for sapolio, the salesman delivered to the purchaser a cake of soap entitled “Pride of the Kitchen” without explanation, and received the customary price. The soap known as “Pride of the Kitchen” is put up in wrappers wholly different from those in which “Sapolio” is put up, and the shape and size of the cake also differs from the usual size of a cake of “Sapolio.” Furthermore, the words “Pride of the Kitchen” are plainly printed in large, legible type across the wrapper containing that soap. Notwithstanding these facts the court held that the defendant, in making the sales as above- de *562 scribed, was guilty of unfair competition and should be enjoined. At the close of the opinion the court says:
“An act or thing done to induce the belief that the one article is' in fact the other is unfair, and indeed unlawful; and this is the true meaning and intent of the acts of the defendant’s salesman complained of.”
The same principle is laid down in the case of the Am. Fibre Chamois Company v. DeLee et al, 67 Fed. Rep., 329; and also in the Saxlehner eases concerning the sale of Hunyadi waters, found in 88 Fed. Rep., 61.
The only question left to be considered is whether Mr. Fred. Tappehorn, the owner of the store, is responsible for the acts of his son, Emil Tappehorn, the salesman. In the Saxlehner cases just referred to the 5th syllabus reáds as follows:
“A retailer, whose clerks, on receiving requests for a particular brand of goods, wrapped up and delivered competing goods, will be enjoined.”
And in Stranahan v. Coit, 55 O. S., 398, it was held that where the servant of a dairyman delivers adulterated milk, his master is liable even although the servant did it maliciously to injure the master. See, also, Nelson Business College v. Lloyd, 60 O. S., 448; Railway Company v. Bank, 56 O. S., 351, 388. In Wood on Master and Servant, Section 301, it is said:
“It is not essential that the master should have known that the act was done, or even that he should have assented thereto; it is enough if it is within the scope of the servant’s authority, express or implied. ’ ’
Relying upon the foregoing authorities, the court is of the opinion that the defendants ought to be enjoined from selling the balance of the mantles in their possession marked “Block” which are of the lot returned to the Raritan Company by the plaintiff, and that they should be further enjoined from selling the Block burner with any other than a genuine Block mantle to such customers as in the future may ask for a Block light, unless the customer is first advised that the mantle going with the burner is not the Block mantle. The defendant having no new *563 facts to set up, the temporary injunction will be made perpetual, and a decree to this effect will be entered when its form has been agreed upon by counsel.
Wilson & Wilson, for plaintiff.
Theodore Horstman, for defendant.